UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TINA L.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:22cv452 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Benefits under the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since December 7, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: right knee degenerative changes; diabetes mellitus; obesity; coronary artery disease, status post stenting for STEMI; hypertension; hyperlipidemia; cardiomegaly; lumbar spondylosis; anxiety disorder; depressive disorder; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to the following additional limitations: The claimant should never climb ladders, ropes, or scaffolds. She can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl on an occasional basis. She should avoid unprotected heights and operating dangerous or heavy machinery with unprotected moving mechanical parts. She can perform work involving simple instructions and routine, repetitive tasks, defined as tasks and instructions that can be learned through short demonstration, up to and including one month. She cannot perform work requiring a specific production rate, such as assembly-line work; however, she can meet production requirements that allow a flexible and goal-oriented pace. She can maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods. She can make simple work-related decisions. She could respond appropriately to predictable, routine changes in the workplace. She could tolerate frequent interaction with supervisors, coworkers, and the general public, and contact with supervisors still includes what is necessary for general instruction, task completion, or training.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 25, 1977 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable

3

      job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 7, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22- 34).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on May 23, 2023. On August 30, 2023, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on September 28, 2023. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

4

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ erred in finding that Plaintiff could engage in sedentary work. Plaintiff alleges that the ALJ merely provided a summary of the evidence, with little or no analysis, on several of Plaintiff's complaints.

When evaluating a claimant's RFC, ALJs must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" SSR 96-8p. ALJs are also obligated to construct an "accurate and logical bridge" from the evidence to their RFC conclusions. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022).

Here, Plaintiff reported significant limitations with prolonged sitting due to pain. She testified that she was never comfortable while sitting, because sitting put "a lot of strain" on her legs and back. (Tr. 64.) She estimated that she could sit for about 10-to15 minutes. (*Id*.) In her June 2020 Function Report, she explained that she could sit for about 20 minutes at a time. (Tr. 274.) In her March 2021 Function Report, she wrote that she could sit for only 15 minutes at a time due to pain. (Tr. 303.)

Plaintiff contends that the record supports her testimony. The record shows that Plaintiff suffers from lumbar spondylosis ( Tr. 525, 1200, 1234). Dr. Ayaz observed reduced range of motion in Plaintiff's lumbar spine and hips. (Tr. 944.) He also observed positive straight leg raise test. (Tr. 942.) Additionally, Plaintiff was significantly obese. The record reflected that she had a

5

body mass index ("BMI") between 47 and 50. (Tr. 941, 1061, 1126, 1427.) With a BMI over 40, she suffered from "class III," or "severe" obesity. Plaintiff points out that Social Security Rulings acknowledge that obesity can impact an individual's ability to sit, and "increases stress on weight-bearing joints and may contribute to limitation of the range of the motion of the skeletal spine and extremities." SSR 19-2p.

While the ALJ acknowledged that Plaintiff testified to problems with prolonged sitting (Tr. 27), the ALJ provided no reasons for concluding that Plaintiff could sustain work that was primarily performed while seated. The ALJ failed to assess the evidence set forth above as it related to Plaintiff's ability to sit. While the ALJ explicitly addressed Dr. Ayaz's examination findings, she concluded that those findings "would not preclude the performance of sedentary exertion work with some postural and environmental restrictions," but provided no support for this conclusion, aside from her own lay speculation. "Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). The vocational expert (VE) testified that an individual who needed to transition between sitting and standing every 20 minutes at will, based on their symptoms and not on a change in work activity, would be unemployable. (Tr. 72-73.)

Plaintiff also testified that she suffered from swelling in her knees, ankles, and feet "[a]lmost always." (Tr. 65.) She had to elevate her legs above her heart using a wedge pillow approximately four times a week. (Tr. 66.) Her doctors recommended that she elevate her legs for circulation. (*Id*.) Plaintiff reported edema and/or swelling in her lower extremities during appointments. (Tr. 1210, 1427, 1456.) Medical providers observed edema and/or swelling in her lower extremities. (Tr. 580, 941, 980.) In her decision, the ALJ acknowledged Plaintiff's

6

testimony. (Tr. 28.) The ALJ also acknowledged that Dr. Ayaz observed edema in both of Plaintiff's lower extremities on August 5, 2020. (Tr. 30.) However, the ALJ did not address Plaintiff's need to elevate her legs anywhere else in her decision or evaluate the supporting evidence. The ALJ never articulated any reasons for excluding an RFC restriction related to leg elevation from the RFC assessment. ALJs are always obligated to "include a discussion of why reported symptom related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p.

Additionally, Plaintiff often reported fatigue. (Tr. 947, 1060, 1123, 1516.) She also suffered from obstructive sleep apnea. (Tr. 1123.) She testified that she had to lie down in the middle of the day to make up for sleep she missed out on at night. (Tr. 65.) In her summary of the hearing testimony, the ALJ noted that Plaintiff napped due to poor sleep. (Tr. 28.) However, the ALJ provided no analysis of how Plaintiff's fatigue or need to nap would affect her ability to work. Social Security Rulings dictate that ALJs must "[s]et forth a logical explanation of the effects" of a claimant's reported symptoms on their ability to work. SSR 96-8p. As noted above, ALJs must also discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." (*Id.*) Here, the ALJ failed to comply with both directives.

The Commissioner argues that Plaintiff's complaints were considered by the State Agency reviewing physicians. (Tr. 105-03, 107-08).  However, as Plaintiff points out, it is the ALJ's duty to provide a narrative discussion of the evidence with citations to relevant medical and non-medical evidence.  The ALJ cannot simply skip this narrative by reaching conclusions similar to a State Agency consultant or other opining medical source.  *Briscoe ex rel. Taylor v. Barnhart*, 425

7

F.3d 345, 352 (7th Cir. 2005).

For the above reasons, remand is warranted due to the ALJ's errors in assessing Plaintiff's physical RFC.

Plaintiff next argues that the ALJ erred in her analysis and evaluation of Plaintiff's mental impairments. Plaintiff contends that the ALJ failed to construct an "accurate and logical bridge" from the evidence in the record to the psychiatric limitations set forth in the RFC assessment.

The ALJ found that Plaintiff was able to "maintain the focus, persistence, concentration, pace, and attention" to engage in work tasks for "two-hour increments, for eight hour workdays." (Tr. 26.) The ALJ concluded that Plaintiff had a moderate limitation in her ability to maintain concentration, persistence, and pace, recognizing that she presented with "poor" concentration during a consultative examination. (Tr. 25.) Plaintiff points out, however, that the ALJ did not explain how, despite these moderate limitations, Plaintiff would be able to focus and carry out work tasks for two-hour increments. Plaintiff maintains that an individual with moderate limitations in concentration, persistence, and pace could not focus, persist, and maintain the pace in two hour segments the same as an average worker.

The ALJ provided a brief summary of some of the evidence, but did not meaningfully assess much of the evidence that reflected that Plaintiff would struggle to focus, persist, and carry out the pace in two-hour increments. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("[The ALJ] must confront the evidence that does not support his conclusion and explain why it was rejected."). For example, Plaintiff testified that she had panic attacks at least three times a week, lasting between 30 and 45 minutes. (Tr. 61.) She endorsed anxiety, fear, anhedonia, fatigue, and feeling overwhelmed. (Tr. 1060, 1514.) During her August 2020 consultative

8

examination, Plaintiff reported that she had panic attacks at least a few times a week. (Tr. 946.) She endorsed the following symptoms of depression: loss of interest; feelings of worthlessness; insomnia; fatigue; poor concentration; and psychomotor agitation. (Tr. 947.) She described the following symptoms of anxiety: panic; shortness of breath; shaking; nausea; and chest tightness. (Tr. 948.) Plaintiff reported flashbacks and nightmares related to PTSD. (*Id*.) She endorsed "difficulty with recalling" some memories of past abuse. (*Id*.) Dr. Wade observed that Plaintiff presented with a "depressed and anxious" mood. (*Id*.) Plaintiff was "tearful and tense in posture." (*Id*.) She had difficulty providing a timeline of events in her life. (*Id.*) She was able to remember only two of three items after a five-minute delay. (*Id*.) Plaintiff incorrectly answered some basic calculations and was unable to accurately complete serial sevens from 100. (*Id*.) Dr. Wade concluded that she "likely [had] poor memory of task instructions," as well as "poor concentration." (Tr. 949.) The ALJ noted Dr. Wade's conclusions when evaluating her opinion (Tr. 30-31), but never connected this evidence, or the other evidence of Plaintiff's mental impairments, to her conclusion that Plaintiff would be able to focus, persist, and maintain pace for two-hour segments.

The Commissioner argues that because the ALJ restricted Plaintiff to "unskilled work" that Plaintiff's limitations in concentration, persistence, and pace, were adequately addressed. As the Seventh Circuit has recognized, however, restrictions to unskilled work does not always accommodate a moderate limitation in concentration, persistence, and pace. *See e.g., Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020) ("[S]omeone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[O]bserving that a person can perform

9

simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift."); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (defining unskilled work as "work that can be learned by demonstration in less than 30 days," holding that "whether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments – *e.g.*, with difficulties maintaining concentration, persistence, or pace – can perform such work"); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014).

As no part of the ALJ's decision provides a supported explanation of how Plaintiff would be able to maintain concentration, persistence, and pace necessary to carry out unskilled work in two-hour increments, this Court finds that the ALJ failed to construct an "accurate and logical bridge" from the evidence to her conclusion. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022). Thus remand is required on this issue.

Additionally, the ALJ found that Plaintiff had moderate limitations in her ability to interact with others. (Tr. 25.) However, the ALJ nonetheless concluded that Plaintiff could sustain frequent interaction with supervisors, co-workers, and the general public. (Tr. 26.) Again, the ALJ's brief summary of the evidence of Plaintiff's mental impairments failed to explain how the ALJ reached this conclusion. Plaintiff argues that the record does not reflect that she would be able to sustain frequent workplace interaction with supervisors, co-workers, and the general public. Plaintiff described panic attacks and significant anxiety during the hearing. (Tr. 58-59, 61-62.) She described difficulty handling stress in Function Reports. (Tr. 275, 304.) Plaintiff reported psychomotor agitation, feelings of worthlessness, panic symptoms, and flashbacks during her consultative examination with Dr. Wade. (Tr. 947-48.) Dr. Wade wrote: "[W]hen she

10

thinks she is 'right' about something, but is 'disrespected' by others about this, she will get 'fired up' and argue . . . She is easily irritated and hypervigilant for perceived threats." (Tr. 948.) Dr. Wade concluded that Plaintiff was "likely to have difficulty in some social interactions, given her anxiety and poor conflict tolerance." (Tr. 949.) While the ALJ noted Dr. Wade's observations when weighing her opinion, the ALJ never explained how this evidence – along with Plaintiff's testimony and statements to the Agency – reflected that she would be able to sustain frequent workplace interaction full-time.

The Commissioner, in response, cites Plaintiff's testimony that she dealt with her panic attacks by using breathing and distraction. Clearly, however, if Plaintiff had a panic attack in the workplace, and had to address it with breathing and distraction, it does not follow that she would be able to remain on task or carry out work tasks adequately. The Commissioner also cites Plaintiff's statements during a July 2021 weight reduction appointment. (Tr. 1342.) This record stated that anxiety is a "concern" but "managed well," and that Plaintiff described herself as "level headed" and "organized." (Tr. 1342.) It is unclear why a single treatment record showing some improvement would outweigh the other evidence of Plaintiff's mental impairments. The Seventh Circuit has recognized that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The Commissioner also argues that Plaintiff did not seek treatment beyond medication for her anxiety attacks. However, the ALJ did not rely on the fact that Plaintiff only used medication as treatment, to conclude that Plaintiff could perform unskilled work in two-hour increments, despite her moderate limitations in concentration, persistence, and pace. While the ALJ may have summarized these records, she did

not analyze them and explain how they supported her conclusions. Thus remand is required on this issue as well.

The Court also notes that Plaintiff has raised issues related to the ALJ's discussion and analysis of Plaintiff's activities of daily living and treatment history. These issues are valid, due to the degree of Plaintiff's limitations, and the lack of detailed analysis of Plaintiff's reported limitations vis a vis the record. Thus, on remand, the ALJ must discuss Plaintiff's limitations in activities of daily living, and her treatment history, and provide an analysis of how Plaintiff's asserted limitations are, or are not, supported by the medical record.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: October 16, 2023.

        s/ William C. Lee
        William C. Lee, Judge
        United States District Court